260 P.2d 693

**EMBLEM et al. v. EMBLEM et al.**

No. 5512.

Supreme Court of New Mexico.

Aug. 11, 1953.

Henry J. Hughes and F. A. Catron, Santa Fe, for appellants.

M. W. Hamilton, Santa Fe, for appellees.

McGHEE, Justice.

This case draws into question the effect of the approval, in the final decree in probate, of the compromise settlement of claims of creditors against the estate by the execution of deeds to real property, belonging to the heirs of decedent, from the administrator of the estate to such creditors, and further raises questions of limitation of action and equitable estoppel. From a decree of the lower court quieting title in the plaintiffs, the heirs of decedent to the property in question, the defendants, being one such creditor, and one claiming through another of them, appeal.

In order to properly present the issues raised, it is necessary to review briefly the history of the prior probate proceeding.

Olaf S. Emblem, the father of the present plaintiffs, died intestate October 22, 1938. At the time of his death he was a resident of Santa Fe County, New Mexico, and owned several tracts of land in such county. His estate was administered in the Probate

Court of Santa Fe County. Claims of the defendants George Emblem, a nephew of decedent, and Lillian Gildersleeve Emblem, the divorced wife of the decedent and mother of the plaintiffs, were approved against the estate in the respective amounts of $393.10 and $5,680, the claim of the nephew being for expenses for the funeral and last illness of the decedent, a rental payment on behalf of deceased and a small promissory note. The claim of the divorced wife was for money due her under decree of divorce for the support of the plaintiffs, who were minor children when the divorce was granted.

There was insufficient personalty in the estate with which to pay the allowed claims, and in 1944 the defendants, George Emblem and Lillian Gildersleeve Emblem, by stipulation with the administrator of the estate, settled and compromised their approved claims for the conveyance by the administrator of the real estate in question to them, the nephew to receive one such tract, and the divorced wife other of the lands. Thereafter the administrator filed his final account and report, the plaintiff, Lillian Eleanor Emblem Sovereign, acknowledging service thereof. The plaintiff, Olaf H. Emblem, was then serving in the armed forces and an attorney was appointed for him who entered his appearance in the customary form, setting out that he had not sufficient information and knowledge to form a belief as to the allegations and matters in the final account and praying for judgment.

In October, 1944, the probate court approved the administrator's final account and report and ordered the conveyances to the defendants George Emblem and Lillian Gildersleeve Emblem, which were executed and delivered to them by the administrator.

After the defendant Lillian Gildersleeve Emblem received her conveyance from the administrator she in turn conveyed a one-half interest in the property to the defendant Hughes as an agreed attorney's fee for his services in connection with proving her claim in probate, and the other one-half interest she conveyed to the plaintiffs. It appears that all of the deeds were recorded.

■ Disregarding, for the moment, the questions of limitation of action and equitable estoppel, the question is where the ownership of the property was at this point. Our decision in Dunham v. Stitzberg, 1948, 53 N.M. 81, 201 P.2d 1000, and the provisions of Section 33–715, N.M.S.A., 1941 Comp., are controlling. In Dunham v. Stitzberg, 53 N.M. at page 95, 201 P.2d at page 1008, we said:

" * * * In this state real property not only descends directly to the heirs or devisees, but the probate courts have no jurisdiction over it. In case of resort to it for the payment of debts, an action must be prosecuted in the

district court for its sale, and the jurisdiction of the probate court extends only over the proceeds from the sale. Sec. 33–715, N.M.Sts.1941."

Section 33–714, N.M.S.A., 1941 Comp., authorizes the sale, mortgage, or lease of realty to pay debts of a decedent when the personal estate is insufficient therefor under the procedure set forth in Section 33–715, supra, which provides:

"The executor or administrator shall present to the district court of the county in which letters testamentary or of administration were issued, his petition setting forth the amount and value of the personal estate according to the inventory and appraisement thereof, and if sale has been made of such personal estate, the amount received from such sale, the amount of debts and claims allowed against the estate and the amount still existing and not allowed, so far as the same may be known, the amount of legacies if any, for the payment of which resort must be had to the real estate, and describing particularly the whole of the real estate whereof the decedent died seized, or in or to which he or she, at the time of his or her decease had any interest, claim or right, the nature of his or her claim, right or title, the nature and value of the several parcels of such real estate respectively, and if the same or any thereof is encumbered, the nature and amount of such encumbrance, and pray the aid of the court in the premises. To such petition the widow or husband and heirs-at-law of such decedent, and the devisees of such real estate, if the same or any thereof be devised in the will of the decedent, and the guardians of such of them as may be minors, and all other persons having any interest in the premises, shall be made defendants."

█ Unquestionably our probate courts do not have jurisdiction to direct a conveyance of real estate by an administrator to effect a settlement of claims against the estate, and when such conveyance is attempted it is absolutely void and the title of the heirs or devisees, as the case may be, to the property in question is not divested thereby.

Although the defendants concede this to be the law, they seek to give effect to the decree in probate and the administrator's deeds under two propositions: (1) That the present action by plaintiffs to quiet their title to the lands is barred by either Section 33–1219, N.M.S.A., Supp.1951, Ch. 46, Laws of 1949, or by the general four-year statute of limitations, Section 27–104, N.M.S.A., 1941 Comp. (2) That the plaintiffs are in equity estopped from challenging the validity of the decree and conveyances made thereunder.

The first contention is without merit. Section 33–1219, supra, provides:

"No action or proceeding shall be brought in any court by any person, or persons, claiming an interest in or to the estate of any deceased person contrary to any judgment or decree of any probate or district court of this state purporting to determine the heirship of such deceased person or title to either the real or personal property of such deceased person's estate, or the distribution of any real or personal property pursuant to the last will and testament of such deceased person, which shall have heretofore been entered, or which may hereafter be entered, after due notice and hearing, as provided by statute, unless such action or proceeding shall be commenced within six (6) months from the time of entry of such judgment or decree, or, if entered before the effective date of this act, within six (6) months from the effective date hereof."

This statute cannot be construed as validating an action of the probate court which was void for want of jurisdiction, but even if it were so construed, it would violate our State Constitution. Dunham v. Stitzberg, supra.

Nor does plaintiffs' action fall under the general statute of limitation. The lands are unimproved and unoccupied, except that a portion of them has been leased to the operator of an airplane field. The trial court found that neither the defendant Hughes nor the defendant George Emblem has had actual possession of the property, and such finding is supported by the record. In Mosley v. Magnolia Petroleum Co., 1941, 45 N.M. 230, at page 251, 114 P.2d 740, at page 754, it is said in answer to a contention the plaintiff there was barred by laches in failing to bring action for some nine years to expunge from the records a forged deed:

" * * * The bar of laches has no application because it never runs in favor of one claiming real property, by or through a void deed, who is not in possession; * * *."

See also Lotspeich v. Dean, 1949, 53 N.M. 488, 211 P.2d 979, and Retsch v. Renehan, 1911, 16 N.M. 541, 120 P. 897.

In order to secure a reversal of the decision of the lower court the defendants strongly urge there are facts sufficient to raise an equitable estoppel against the plaintiffs.

The facts asserted are the acquiescence of the plaintiffs in the method agreed upon by the defendants and the administrator for the settlement of the claims; the failure of the plaintiffs to attempt to vacate or modify the probate decree; the recognition by plaintiffs of the interest of

the defendants in the lands; the recording of the deed to plaintiffs from their mother of a one-half interest in the lands; the attempt by the plaintiff Olaf H. Emblem to purchase the interest of the defendant Hughes, and the payment of taxes on the lands by defendants Hughes and George Emblem.

The elements necessary to constitute equitable estoppel are set forth in Chambers v. Bessent, 1913, 17 N.M. 487, 134 P. 237, Syll. 2, as follows:

"To constitute an equitable estoppel, there must be: (1) Conduct—acts, language, or silence—amounting to a representation or concealment of material facts. (2) These facts must be known to the party estopped at the time of his said conduct, or at least the circumstances must be such that knowledge of them is necessarily imputed to him. (3) The truth concerning these facts must be unknown to the other party claiming the benefit of the estoppel at the time when such conduct was done and at the time when it was acted upon by him. (4) The conduct must be done with the intention, or at least with the expectation, that it will be acted upon by the other party, or under such circumstances that it is both natural and proper that it will be acted upon. (5) The conduct must be relied upon by the other party, and, thus relying, he must be led to act upon it. (6) He must in fact act upon it in such a manner as to change his position for the worse; in other words, he must so act that he would suffer a loss if he were compelled to surrender or forego or alter what he has done by reason of the first party being permitted to repudiate his conduct and to assert rights inconsistent with it."

Of these elements Nos. 3 and 6 are conspicuously absent from the facts before us. The property is unimproved, and, as seen above, neither of the defendants claiming the lands has been in actual possession thereof. The taxes on the land which were paid by the defendant Hughes were paid under an understanding between the mother, Hughes and the plaintiff, Olaf H. Emblem, that the payments would be adjusted as to the property conveyed to the mother. The taxes paid by the defendant, George Emblem, can hardly be considered a substantial enough detriment, standing alone, for him to successfully invoke the doctrine of equitable estoppel, and no authority is cited that it is. Indeed, the only conceivable detriment sustained by the defendants was in the surrender of their claims in probate under the attempted settlement, and the settlement was proposed by them, they entered into it voluntarily with full knowledge of all of the facts, while the plaintiffs merely remained silent. They did not request the settlement. They did not

represent the settlement would be valid. The trial court found:

"That nothing done by the plaintiffs herein or either of them has in any way misled the defendants or either of them, or caused them to alter or change in any way their position to their detriment."

This finding is fully supported by the record in the case.

Much is said in the briefs of the defendants on this appeal about the plaintiffs having recognized the defendant Hughes had an interest in the land and attempting at one time to purchase such interest. This court said in Hoskins v. Talley, 1923, 29 N.M. 173, 220 P. 1007, Syll. 4:

"When a person has acquired complete title to lands by adverse possession, and afterwards verbally recognizes the title of the prior owner and verbally agrees to accept from such prior owner a deed to a part of such lands, in consideration of which she verbally agrees to waive her claim to the remainder, such person does not thereby divest herself of such title nor invest the same in such prior owner, and such acts cannot estop the holder of such title by adverse possession, nor those claiming under her, to assert the same."

For similar holding, see Chambers v. Bessent, supra.

Furthermore, even if the conduct of the plaintiffs might, under some circumstances, be made the basis of estoppel, it cannot be so urged here because all of the acts or representations pointed to by the defendants were had *after* the defendants had proposed and entered into the void transaction. It is elementary that the acts had or representations made must occur before the action leading to the detriment to the one claiming the estoppel is taken, else how could they have been relied upon by him?

The judgment of the lower court is affirmed.

It is so ordered.

SADLER, C. J., and LUJAN, J., concur.

SEYMOUR, J., not participating.

COMPTON, J., dissents.