201 P.2d 1000

**DUNHAM et al. v. STITZBERG et al.**
No. 5015.

Supreme Court of New Mexico.

Aug. 10, 1948.

Rehearing Denied Feb. 1, 1949.

Rodey, Dickason & Sloan, and Frank M. Mims, of Albuquerque, for appellants.

Don G. McCormick, J. W. Stagner, and Caswell S. Neal, all of Carlsbad, E. R. Wright, Carl H. Gilbert, J. O. Seth, all of Santa Fe, D. D. Archer and Neil B. Watson, both of Artesia, Hervey, Dow & Hinkle, of Roswell, and James M. Hervey, all of Roswell, and George W. Robertson, of Raton, amici curiæ.

Rueckhaus & Watkins and A. H. McLeod, both of Albuquerque, for appellees.

BRICE, Chief Justice.

The question is whether the appellant should recover damages from the appellee for the alleged breach of a covenant of warranty contained in a deed, on the asserted ground that the title to the property conveyed had partially failed.

The facts are stipulated, and those essential to a determination of the issues are in substance as follows:

George K. Angle died testate on May 8, 1932, and at that time owned certain per-

sonal property, not here material, and lots 33 and 34 in block 16 of the Perea Addition to the City of Albuquerque, New Mexico. By the terms of his will and testament all of his property, real and personal, was bequeathed or devised to his wife Sarah Helen Angle. At the time of his death the deceased had two children, Richard K. Angle and Katherine Angle Tamme, both adults and neither of whom was mentioned in his will. This will was duly filed for probate in the probate court of Bernalillo County on May 16, 1932, and was probated in due course. The two children of deceased accepted service of notice of the proving of the will, and consented to its probate in their absence; made no objection thereto nor did they or either of them contest it. The deceased's widow, Sarah Helen Angle, the sole beneficiary, was appointed executrix of the will and filed her final report as such on July 3, 1933.

On the same day an order was entered in the cause, providing that a final hearing in accordance with law be had on said estate on the 11th day of September 1933 and that due notice thereof be given by publication and posting. It seems that notice was not given as required by this order and that a subsequent order was entered on the 11th day of September 1933, as follows:

"It now appearing to the court that no sufficient publication was made upon the filing of the final report herein and the order of the court setting date for hearing thereon, it is now ordered by the court that final hearing be had on said estate on the 6th day of November 1933, and that due notice thereof be given by publication and posting."

Notice of the hearing on the final account and report of the executrix as ordered, addressed to Sarah Helen Angle, widow of deceased, and Richard Angle, each of Albuquerque, New Mexico, and Mrs. Lawrence Tamme of Santa Fe, New Mexico; and all unknown heirs of George K. Angle, deceased, and all unknown persons, if any, claiming any lien upon, or interest, right or title in or to the estate of the decedent, was issued, published and posted as the law directs. In the notice those addressed were notified of the time and place "for hearing objections, if any there be, to the approval and settlement of said final report, and the discharge of the executrix, and at the same time and place the court will likewise proceed to determine the heirship of decedent, the ownership of said estate and persons entitled to the distribution thereof."

Mrs. Tamme waived service of this notice and acknowledged receipt of a copy thereof and agreed that a hearing on the final report could be had at any time.

There was filed in the cause a "receipt" dated the 25th day of September 1933, in which Sarah Helen Angle personally re-

ceipted Sarah Helen Angle executrix for "all the property and estate of the late George K. Angle," which is therein particularly described, and a part of the property so described was the real estate here involved.

On November 13, 1933, an order approving the final account and report was entered in the probate proceeding, which order is as follows:

"This matter coming on to be heard upon the final report of the executrix, Sarah Helen Angle, herein; and it appearing that due notice of the filing of said report and of hearing thereon has been given by posting and publication, as required by law, and it further appearing that the time within which claims might be filed has elapsed; that said estate has been fully and legally administered; that no contests have been filed against the will of the late George K. Angle, as probated herein, and that said will stands in all respects as the last will and testament of said George K. Angle, and that in accordance with its terms, Sarah Helen Angle, is the sole and only beneficiary thereof, and inherited all of the real and personal property of the said George K. Angle, and has been given possession thereof by the Executrix herein, and final receipt for personal property filed herein; and that there are no unpaid claims of any sort or nature against said estate, and that no inheritance tax is found due;

"And it is therefore adjudged, ordered and decreed that said final account and report be and it is hereby approved and confirmed, and it is further ORDERED that said estate be closed and said Executrix released and discharged. Done in open Court at Albuquerque, Bernalillo County, New Mexico, this 13th day of November A. D. 1933. (Sgd.) D. A. Macpherson, Jr. Judge."

The probate court had knowledge that the deceased at the time of his death had two adult children and that they lived in Albuquerque, New Mexico.

The inventory of the estate included the real estate mentioned.

Although Katherine Angle Tamme was before the court in the probate case and waived service of all notices required by law to be served upon her, she filed no answer, statement or claim of any character in the probate court; nor did she claim as an heir any ownership or interest of any kind in her father's estate; nor did she protest, contest or object to the probate of the will, or to the final order of the court wherein the court found Sarah Helen Angle was the sole beneficiary under the deceased's will, and that she inherited all of his real and personal property and had been placed in possession thereof. There is no evidence that Katherine Angle Tamme during her lifetime ever made any claim to any interest in her father's estate.

The trial court concluded as a fact that from the various things stated and done by Katherine Angle Tamme that she showed an intention to, and had abandoned any inheritance or ownership in her father's estate in favor of her mother.

Katherine Angle Tamme died in the year of 1938 and Lawrence A. Tamme, her husband was her sole heir at law and inherited her interest in the property in question, if any she had.

The appellees through mesne conveyances acquired the title of Sarah Helen Angle and Richard W. Angle in and to the real property described; and on November 10, 1943, entered into a contract with the appellants to sell it to them for the sum of $6300; $1000 of which was paid in cash and the remainder to be paid in installments. It was agreed that upon the completion of such payments the appellees would deliver to the appellants a warranty deed conveying to them a good and merchantable title to the property in question. For the purpose of carrying out the terms of this contract, the apellees executed a warranty deed which conveyed the property to the appellants and placed the deed in escrow to be delivered to appellants upon payment of the balance of the purchase price.

On November 20, 1944, the appellants entered into a contract wherein they agreed to sell the property in question to one George Staggs and to convey to him a good and merchantable title thereto, for a cash consideration of $6800. Staggs objected to the title offered because, as asserted by him, Katherine Angle Tamme as a pretermitted child of her deceased father owned an undivided 3/16 interest in the property at the time of her death, and that her husband, Lawrence A. Tamme, then owned it as her sole heir at law. Upon being so advised, the appellants notified appellees of the condition of the title and stated that the interest of Tamme could be bought for $637.50 and requested appellees to purchase it and thereby make good their warranty. This appellees refused to do, asserting that Tamme had no right, title or interest in or to the property. Thereafter on December 14, 1944 the appellants under protest paid the balance due to appellees under their contract and received the warranty deed involved in this suit. The appellants believing that Lawrence A. Tamme did own an undivided 3/16 interest in this property, and to consummate their contract with Staggs, obtained a quit claim deed therefor from Tamme, paying him $637.50 consideration therefor. This action was brought to recover this amount, which appellants assert was necessarily paid to render their title merchantable.

The deceased's pretermitted children were each entitled to that portion of their father's estate that they would have inherited "if he (the father) had died intestate," by virtue of the following statute:

"If any person make his last will and die, leaving a child or children, or descendants of such child or children, in case of their death, not named or provided for in such will, although born after the making of such will, every such testator, so far as shall regard such child or children, or their descendants not provided for, shall be deemed to die intestate; and such child or children, or their descendants, shall be entitled to such proportion of the estate of the testator, real and personal, as if he had died intestate; and the same shall be assigned to them, and all the other heirs, devisees, and legatees shall refund their proportional part." Sec. 32-107, N.M.Sts. 1941.

While the trial court found as a fact that the real estate in question was the property of deceased, and inferentially, his separate estate; the parties seem to treat it as community property of the deceased and his wife Sarah Helen Angle. If the property was his separate estate, it descended one-fourth to his wife and three-eighths to each of the pretermitted children. If it was community property his widow's interest was five-eighths, and each of the children three-sixteenths thereof. The following statutes control:

"Upon the death of the husband one-half of the community property goes to the surviving wife and the other half is subject to the testamentary disposition of the husband, and in the absence of such disposition goes one-fourth to the surviving wife and the remainder in equal shares to the children of the decedent and further as provided by law. In the case of the dissolution of the community by the death of the husband the entire community property is equally subject to his debts, the family allowance and the charge and expenses of administration." Sec. 31-109, N.M.Sts.1941.

"Subject to the provisions of sections 1840 and 1841 [§§ 31-108, 31-109] of this article when any person having title to any estate, not otherwise limited by marriage contract, dies without disposing of the estate by will, it is succeeded to and must be distributed subject to the payment of his debts in the following manner: One-fourth thereof to the surviving husband or wife and the remainder in equal shares to the children of decedent and further, as provided by law." ' Sec. 31-110, N.M.Sts. 1941.

Insofar as Katherine Angle Tamme was concerned the deceased died intestate.

But whether the property was separate or community estate, that portion of the real property which under the statutes of descent was inherited by Katherine Angle Tamme passed directly to her at the instant of her father's death, and not to or through the executor. That is the import of the following statute:

"The real estate of a decedent shall pass directly to the heirs or devisees and not

to the executor or administrator; but if there be no heir or devisees present personally or by guardian competent to take possession of the real estate left by the decedent, the executor or administrator may take possession of such real estate and demand and receive the rents and profits thereof, and do all other acts relating thereto which may be for the benefit of the persons entitled to such real estate. This section shall not interfere with the right of the executor or administrator to take proceedings for the sale of real estate, as elsewhere provided." Sec. 33-702, N.M. Sts.1941.

See Smith v. Steen, 20 N.M. 436, 150 P. 927.

The Constitution of New Mexico fixed the jurisdiction of the district courts and probate courts, as follows:

"The district court shall have original jurisdiction in all matters and causes not excepted in this constitution, and such jurisdiction of special cases and proceedings as may be conferred by law, and appellate jurisdiction of all cases originating in inferior courts and tribunals in their respective districts, and supervisory control over the same. * * *" Art. 6, Sec. 13, N.M.Const.

"A probate court is hereby established for each county, which shall be a court of record, and, until otherwise provided by law, shall have the same jurisdiction as is now exercised by the probate courts of the Territory of New Mexico. The legislature shall have power from time to time to confer upon the probate court in any county in this state, general civil jurisdiction coextensive with the county; provided, however, that such court shall not have jurisdiction in civil causes in which the matter in controversy shall exceed in value one thousand dollars, exclusive of interest; nor in any action for malicious prosecution, divorce and alimony, slander and libel; nor in any action against officers for misconduct in office; nor in any action for the specific performance of contracts for the sale of real estate; nor in any action for the possession of land; nor in any matter wherein the title or boundaries of land may be in dispute or drawn in question; nor to grant writs of injunction, habeas corpus or extraordinary writs. Jurisdiction may be conferred upon the judges of said court to act as examining and committing magistrates in criminal cases, and upon said courts for the trial of misdemeanors in which the punishment can not be imprisonment in the penitentiary, or in which the fine can not be in excess of one thousand dollars. A jury for the trial of such cases shall consist of six men.

"Any civil or criminal case pending in the probate court, in which the probate judge is disqualified, shall be transferred to the district court of the same county for trial." Art. 6, Sec. 23, N.M.Const.

The jurisdiction of the probate court as provided by law (N.M.L.1935, Ch. 99, Sec. 1) is as follows:

"The probate courts shall have exclusive original jurisdiction in all the following cases, to wit: The probate of last wills and testaments, the granting of letters testamentary and of administration and the repealing or the revocation of the same, the appointment and removal of administrators, the appointment and removal of guardians of minors, the settlement and allowance of accounts of executors, administrators, and guardians, the hearing and determination of all controversies respecting wills, the right of executorship, administration and guardianship, the hearing and determination of all controversies respecting the duties, accounts and settlements of executors, administrators and guardians, the determination of heirship, the hearing and determination of all controversies respecting any order, judgment or decree in such probate courts with reference to any of the foregoing matters of which the probate courts are herein given exclusive original jurisdiction, and no suit shall be prosecuted or begun in any district court to review or in any manner inquire into or reopen or set aside any such order, judgment or decree, and no such order, judgment or decree shall be reviewed or examined in any district court except upon an appeal taken in the manner provided by law. Provided, however, that this section shall in no way affect the powers of the district court to act in cases removed to it from the probate court by virtue of the various removal statutes now in existence or that hereafter may be enacted." N.M.Sts.1941, Sec. 16-410.

The following was enacted in 1941:

"In addition to their existing jurisdiction the district courts of this state shall have concurrent jurisdiction with the probate courts in each county within their respective districts as to all matters heretofore within the exclusive jurisdiction of said probate courts." N.M.Sts.1941, Sec. 16-312.

The Constitution conferred upon district courts original jurisdiction of all matters and causes *"not excepted* in this constitution." Does this mean that where *original jurisdiction* is conferred elsewhere by the Constitution (on probate courts for example), that such original jurisdiction is "excepted" from that conferred on district courts? We do not find it necessary to pass upon this question. But in view of the last quoted statute, the question is interesting.

The legislature has not conferred upon the probate court of any county the general civil, criminal or other specific jurisdiction which it is authorized to confer by Sec. 23 of Art. 6 of the State Constitution. The legislature's power to grant non-probate jurisdiction to probate courts is limited to these specific grants, not only by the provision authorizing the limited

jurisdiction over small matters, but by Sec. 13 of Art. 6, which confers jurisdiction over all other "matters and causes" on the district court.

The jurisdiction of probate courts over probate matters is provided for by the first sentence of that section, to-wit:

"A probate court is hereby established for each county, which shall be a court of record, and, until otherwise provided by law, shall have the same jurisdiction as is now exercised by the probate courts of the Territory of New Mexico."

The statute conferring the jurisdiction upon that court, in effect at the time of the adoption of the Constitution, was enacted in 1889 and amended in 1899; and rearranged in the New Mexico Code of 1915 (Sec. 1430, N.M.Code 1915). It is not so materially different from the present statute as to necessitate setting it out in full. The words "the determination of heirship" were inserted in the Act of 1935, supra.

 But it was not intended by the last quoted provision of the Constitution that the probate jurisdiction of probate courts should remain frozen. The legislatures can change, limit, or extend, the jurisdiction of probate courts over all matters which, by the English law and general jurisprudence of this country, are from their nature ordinarily classed as being within the jurisdiction of probate courts, First Nat'l Bank v. Dunbar, 32 N.M. 419, 258 P. 817; Perea v. Barela, 5 N.M. 458,

23 F. 766 and 6 N.M. 239, 27 P. 507; Ferris v. Higley, 20 Wall. 375, 22 L.Ed. 383; Johnson v. Christian, 128 U.S. 374, 9 S.Ct. 87, 32 L.Ed. 412; unless within the exclusive jurisdiction of district courts. The Constitution confers upon district courts exclusive original jurisdiction of "*any matter* wherein the title or boundaries of land may be in dispute or drawn in question," and by its express provisions the legislature cannot confer this jurisdiction upon probate courts or justices of the peace.

The executrix filed her final report and gave notice thereof as required by Sec. 33-1207, N.M.Sts.1941; the parts of which, material to a decision, are as follows:

"When the estate is fully administered, it shall be the duty of the executor or administrator to file his final account and report. * * * The account and report shall also contain the names and addresses of * * * any and all devisees and legatees, as the same shall appear in the last will and testament of such decedent. Such account and report shall be verified by the oath of said executor or administrator, and upon the same being filed, the court or judge thereof shall appoint a day at some term subsequent thereto for the hearing of objections to such final account and report, the settlement thereof, and for a hearing and determination of the heirship to said decedent, the ownership of his estate, and the interest of each respective

claimant thereto or therein, and the persons entitled to the distribution thereof. * * *

"The notice of hearing above referred to shall be entitled in the probate court, or district court, as the case may be, and shall contain the title of the cause and be addressed to all of the heirs, legatees and devisees as shown in the report, or petition 'for appointment of the administrator or will, and to all unknown heirs of said decedent and all unknown persons claiming any lien upon or right, title or interest in, or to the estate of said decedent, and shall further contain a statement that on the day named in said notice the probate court will proceed to determine the heirship of said decedent, the ownership of his said estate, and the interest of each respective claimant thereto or therein, and the persons entitled to the distribution thereof * * *."

Katherine Angle Tamme made no objection to the final report of the executrix, though she had legal notice that it was filed; nor did she file an answer setting up the facts constituting her claim of "heirship, ownership, or interest in said estate," as she might have done under authority of the following statute:

"Any heir at law, devisee, legatee, creditor or other person interested in the estate may, on or before the day appointed for such hearing and settlement, file his objections thereto, or to any particular item thereof, specifying the particulars of such objections, and any heir at law, legatee or devisee claiming or having any interest in said estate or in the final distribution thereof, may, in addition to any objections or exceptions to such report, file with the clerk of the probate court his answer setting up the facts constituting his claim of heirship, ownership, or interest in said estate, and shall, in addition thereto, serve a copy of the same upon the executor or administrator, or upon the attorney of record of such executor or administrator." Sec. 33-1211, N.M.Sts.1941.

The hearing on the final report was duly had, and the decree copied in this opinion was entered, the authority for which is the following statute:

"Upon the hearing the court shall give a decree allowing or disallowing the final account, either in whole or in part, as may be just and right; and, in addition thereto, shall proceed to determine the various claims of heirship, ownership, or interest in said estate, and shall proceed to hear the evidence which may be taken orally or by deposition in the same manner as provided in civil actions. And from the evidence produced, the court shall determine the heirship to said decedent, the ownership of his estate, and the interest of each respective claimant thereto, or therein, and the persons entitled to the distribution thereof, and enter a decree accordingly, and the final determination of the court

thereon shall be final and conclusive in the distribution of said estate *and in regard to the title to all property of the estate of the said decedent.* Appeals shall be allowed from any final decree or judgment determining heirship, the ownership of the decedent's estate, or the interest of any claimant thereto or therein in the manner now provided by law for appeals from the probate court." (Our emphasis.) Sec. 33-1212, N.M.Sts.1941.

It is provided by Sec. 33-1206, N.M.Sts. 1941, that:

"Any time during the process of administration of an estate of a deceased person upon application of the administrator or executor, or of any person who has not been named as heir, devisee, legatee or beneficiary in the petition for the appointment of administrator, or to probate a will, and who claims to be such heir at law, devisee, beneficiary or legatee, the probate court or district court having jurisdiction may determine the heirship of such decedent, the ownership of his estate and the interest of each respective claimant thereto or therein."

Provision follows for the form of application and for process, answer, and for a hearing. Then it is provided:

" * * * The hearing shall be conducted as other civil causes, and upon hearing the evidence, the court shall give a decree determining the heirship of the decedent, the ownership of his estate and the interest of each respective claimant thereto or therein, and such decree shall be final and conclusive in the distribution of the estate and in regard to the title to all property of the estate of such decedent, but shall be subject to the rights of all creditors of the estate.

"Any person aggrieved by any such decree may appeal therefrom within 90 days in the manner provided by law."

No application was made under this statute for the determination of heirship. It seems to be supplementary to Sec. 33-1207, supra; and for the benefit of those interested not named in the petition for appointment of an administrator or executor. It is quite obvious that the same jurisdiction is given the probate court to determine heirship and ownership of estates of deceased persons as given by Sec. 33-1207.

Under the English law as it was at the date of our separation from England, real estate descended direct to the heirs, and devises were contested in actions of ejectment; whereas the ecclesiastical courts had jurisdiction over testaments and estates of personal property. In Re Morrow's Estate, 41 N.M. 117, 64 P.2d 1300; Ellis v. Davis, 109 U.S. 485, 3 S.Ct. 327, 27 L.Ed. 1006; 3 Pomeroy's Eq.Jur., Perm.Ed., Sec. 913.

The jurisdiction of probate courts in this country has been much broadened since its separation from England. But,

as a general rule, the English law of descent of real property has been continued by statute. 16 A.J., Descent and Distribution, Sec. 22. In this state real property not only descends directly to the heirs or devisees, but the probate courts have no jurisdiction over it. In case of resort to it for the payment of debts, an action must be prosecuted in the district court for its sale, and the jurisdiction of the probate court extends only over the proceeds from the sale. Sec. 33-715, N.M.Sts. 1941.

It is asserted by the appellees that the judgment of the probate court determined heirship, and ownership of the estate in question, to be in Mrs. Angle; and that Mrs. Tamme and her successors in title are estopped from claiming any interest in the real estate belonging to the deceased Angle.

There is no dispute but that Mrs. Tamme was a pretermitted heir; that the will was void as to her; that she inherited a three-sixteenths interest in the described real property in question; that her husband as her only heir succeeded thereto and conveyed a good title to appellant if Mrs. Tamme was not estopped by the judgment of the probate court or by a waiver of her rights and interest in favor of her mother.

The first question to be answered is whether Mrs. Tamme and her heir and his assigns were and are estopped by the judgment of the probate court to claim title to the three-sixteenths interest in the property in question.

The notice required by Sec. 33-1207, N. M.Sts.1941, hereinbefore copied, provides among other things that a day shall be set by the Court to hear the final account "and for a hearing and determination of the heirship to said decedent, the ownership of his estate, and the interest of each respective claimant thereto or therein, and the persons entitled to the distribution thereof. * * *" And it is further provided therein that notice of such hearing shall be given to all of the heirs, legatees and devisees as shown in the report "* * * and to all unknown heirs of said decedent and all unknown persons claiming any lien upon or right, title or interest in, or to the estate of said decedent * * *." And Sec. 33-1212 of the statutes provides that: "From the evidence produced, the court shall determine the heirship to said decedent, the ownership of his estate, and the interest of each respective claimant thereto, or therein, and the persons entitled to the distribution thereof, and enter a decree accordingly, and the final determination of the court thereon shall be final and conclusive in the distribution of said estate *and in regard to the title to all property of the estate of the said decedent.*" (Our emphasis.)

The probate courts in New Mexico have no jurisdiction to try or determine

title to either real or personal property as between an estate or heirs and devisees on the one hand and strangers to the estate on the other. Caron v. Min. Co., 12 N.M. 211, 78 P. 63, 6 Ann.Cas. 874; Waterland v. Superior Court, Cal.App., 90 P.2d 344; 21 C.J.S., "Courts," § 303. This jurisdiction is vested exclusively in the district court by Article 6, Sec. 13 of the state Constitution in which it is provided that "the district court shall have original jurisdiction *in all matters and causes* not excepted in this constitution * * *." (Our emphasis.)

These courts are clothed with no jurisdiction over real property, nor have they authority to distribute such property among the heirs or devisees of a decedent as have similar courts of the states of Washington, New York, Nebraska, California and others. If the legislative intent contemplated the bringing in of parties who are strangers to the estate, and a determination of *title* thereto as between such strangers and the estate; then the statute runs counter to Sec. 23 of Art. 6 of the State Constitution, supra. We conclude that such was not the legislative intent.

We are of the opinion that the decree provided for was only intended to effect a distribution of the personal property of the estate among the heirs, legatees or other distributees; that the word "estate" as used in these statutes has reference to the estate over which the probate court is given jurisdiction, to-wit, the personal property, and not the real property which descends directly to the heirs; and that the decree binds only those who are entitled to a distributive share of the personal property belonging to the estate; that it in no way affects any claim of title of a stranger to the estate, or to real property that descends directly to the heirs. The decree is "final and conclusive" as to the title of the distributees of the personal property *of the estate,* over which alone the court has jurisdiction; that is, as to the relative interests of those claiming as heirs, legatees, etc.

It is asserted that the decree of the probate court determined that Mrs. Angle was the only heir of the deceased Angle. We do not so construe it. The court knew from the record that the deceased had two children, and it is obvious that it made no such determination. It appears in the preliminary statement of the decree:

"* * * that said will stands in all respects as the last will and testament of said George K. Angle, and that in accordance with its terms, Sarah Helen Angle, is the sole and only beneficiary thereof, and inherited all of the real and personal property of the said George K. Angle, and has been given possession thereof by the executrix herein * * *."

This appears to be true. The script is the will of Angle; and *in accordance with its terms* Mrs. Angle was the

sole beneficiary and inherited Angle's property. But this was not a determination of heirship. A deceased person's heirs at law are those persons who succeed to his estate under statutes of descent and distribution. In re Towndrow's Will, 47 N.M. 173, 138 P.2d 1001. No such determination was made. But assuming the court had made a finding to the effect that Mrs. Angle was the deceased's only heir at law, it was not so decreed. The mandatory part of the decree recites:

"And it is therefore adjudged, ordered and decreed that said final account and report be and it is hereby approved and confirmed, and it is further ordered that said estate be closed and said Executrix released and discharged."

The judgment of a court is the mandatory statement and not preliminary statements or recitals preceding it (Eckerson v. Tanney, D.C., 235 F. 415), and if plain and unambiguous (as in this case) it may not be modified, enlarged, restricted, or augmented or diminished by reference to other documents. Rothschilds & Co. v. Marshall, 9 Cir., 44 F.2d 546. A conclusion of law (Neilsen v. Neilsen, 216 Cal. 150, 13 P.2d 715), or finding of fact (Mitchell v. Fleming, 77 Cal.App. 241, 246 P. 152; Leach v. Bank, 202 Ia. 265, 209 N. W. 422) that goes beyond the judgment (Roessler & Hasslacher Chemical Co. v. United States, 13 Cust.App. 451) must give way if inconsistent with the mandatory recitals in a plain and unambiguous judgment.

It is true that an opinion, pleadings, findings and conclusions, may be resorted to if necessary to interpret or explain an ambiguous judgment, but not otherwise. In this case the plain and unambiguous judgment (or decree, as it is called in the statutes) merely approved the final report of the executrix and discharged her as such. Heirship was not determined.

The trial court found that Mrs. Tamme, her heirs and her assigns, were estopped by her actions from claiming any interest in and to the real estate described in the complaint; because of "the various things done" by Mrs. Tamme, and "the various things not done" by her, as stated in the statement of facts in this opinion, that is, the waiver of service of notice, the fact that she filed no answer, statement or claim of any character in the probate court, that she made no claim of heirship or ownership or interest in the estate and filed no protest, contest or objection to the probate of the will, or to the final order of the court, although a party to the proceedings.

We stated in Re Towndrow's Will, 47 N.M. 173, 138 P.2d 1001, 1005:

"The statute confers jurisdiction upon the probate courts to probate wills and there are no parties unless by voluntary appearance some interested person should enter his appearance to contest the probate

of a will. The action is in rem; the court takes jurisdiction of the script purporting to be a will."

■ Mrs. Tamme never appeared in the proceeding for any purpose. She waived service of notice only. She could not contest the will because she was not a "person interested."

We held in Re Morrow's Estate, 41 N.M. 723, 73 P.2d 1360, that only a person pecuniarily interested in a will was authorized to contest it under Sec. 32-212, N.M. Sts.1941, which reads as follows:

"When a will has been approved, any person interested may at any time within six [6] months after such probate, contest the same or the validity of the will. For that purpose he shall file in the court in which the will was proved, a petition in writing, containing his allegations against the validity of the will or against the sufficiency of the proof, and praying that the probate may be revoked."

A very similar case is in re Sankey's Will, 199 Cal. 391, 249 P. 517, 521. The California contest statute, while not identical in words with ours, is not different in meaning. Regarding the right of a pretermitted child to contest a will, the California court said:

"Under the provisions of section 1306 of the Civil Code, the pretermitted heir, immediately upon her birth, succeeded to an undivided one-third of her father's es-

tate as completely as though there had been no will which purported to dispose of the entire estate. She inherited this share in spite of the will, and in hostility to it. On principle it naturally follows that one who claims an interest adversely to the will is not entitled to be heard in an action to contest or construe the same. 40 Cyc. 1847–1849. To the same effect the author of Alexander on Wills says:

" 'An omitted child cannot appear and contest the probating of the will on the grounds of the omission, as his rights are independent of the will, and are unaffected by it. Neither has he the right to have it set aside.' 2 Alexander on Wills, 962; McIntire v. McIntire, 64 N.H. 609, 15 A. 218; Bunce v. Bunce, Sup., 14 N.Y.S. 659.

"In 28 R.C.L. 386, it is said:

" 'In order that a person may contest a will it is necessary that such person shall have some interest which may be affected by the probate of the proposed will. Furthermore, such interest must be pecuniary and one detrimentally affected by the will.'

\* \* \* \* \* \*

" * * * But because he may be interested in the administration or distribution of the estate it does not follow that he may participate, as an interested party, in the contest of the will, or in a petition to set the probate thereof aside. In contemplation of law, so far as the pretermitted heir is concerned, there is no will. The title of the pretermitted heir to his share

of the property vests absolutely at the death of the testator, subject only to administration, and is in no way affected by the mere process of probating the will. The pretermitted heir is not even dependent upon the probate proceedings for distribution of his share of the estate, but may resort to a proper proceeding in equity."

▮▮▮ Mrs. Tamme became the owner of the three-sixteenths interest in the real property at the instant of her father's death. It was in no way involved in the probate proceedings; and she, her heir and his successors could not have been estopped by her acts and failure to act as recited in the findings, in respect to the real property, because the will was void as to her, by operation of law. Her rights were independent of the will and were unaffected by it. She had no occasion to contest the will, and could not have done so because of lack of interest therein. In re Sankey's Will, supra; Stewart v. Lohr, 1 Wash. 341, 25 P. 457, 22 Am.St.Rep. 150; Smith v. Olmstead, 88 Cal. 582, 26 P. 521, 12 L.R.A. 46, 22 Am.St.Rep. 336. There was no estoppel as asserted.

We could dispose of the case upon the foregoing observations, but a question of great public interest, and one pertinent to the issues, was argued in the briefs of the parties. It is whether a judicial determination of who constitute the heirs at law of a deceased person in a proceeding in the probate court, so conclusively settles such facts or questions that they become res judicata, and therefore conclusive evidence of who are the heirs of such decedent in subsequent suits in the district court, in which title to real property is involved.

▮▮▮ That a probate court of this state has the implied authority to determine who are the heirs of deceased persons in proceedings involving estates of decedents pending in such court, follows from the authority it has to distribute estates of personal property among heirs of the decedent (Smith v. Steen, 20 N.M. 436, 150 P. 927), irrespective of any statutory grant of such power, although in this state specific authority to determine heirship of decedents has been granted to probate courts.

It is asserted that a judgment of the probate court determining heirship after due notice to all concerned, is a determination of facts by a court of competent jurisdiction, and the judgment is conclusive evidence of such facts if proven in a trial in any court of this state, where the same question of fact is a material issue between heirs of the decedent, or their privies. For example it is said that had it been judicially determined in the Angle probate proceeding that Mrs. Angle was the sole heir at law of the deceased Angle, then the pretermitted children and their successors would be estopped to claim as heirs the real estate they inherited from their father by virtue of Sec. 33-702, N.M.Sts.1941, supra.

We cannot agree to this. In this state judgments of probate courts are in rem, In Re Towndrow's Will, 47 N.M. 173, 138 P.2d 1001; real estate descends directly to the heirs or devisees and not to the executor or administrator. Sec. 33-702, N.M.Sts.1941; Smith v. Steen, supra. In some states probate courts are given authority to take possession of and distribute or partition real estate among the heirs. It is held by the courts of some of these states that a judgment of a probate court in such proceeding is conclusive as to the facts necessarily determined, such as heirship in partitioning the real property among the heirs of a decedent.

In Washington the Superior Court has probate jurisdiction, as well as general common law and equity jurisdiction, and may exercise both in probate proceedings, even to the extent of trying title to real estate, In Re Martin's Estate, 82 Wash. 226, 144 P. 42; Coleman v. Crawford, 140 Wash. 117, 248 P. 386.

In Oklahoma county courts have jurisdiction over all the property of a deceased person, including real estate, with authority to determine heirship and distribute it among the heirs or devisees entitled thereto. The courts of Oklahoma hold that a judgment of the probate court determining heirship and distributing the real estate of decedents among the heirs is conclusive on all courts. In Re Thompson's Estate, 179 Okl. 240, 65 P.2d 442.

The cases of Shade v. Downing, 68 S.Ct. 702, 92 L.Ed. —— and U. S. v. Hellard, 322 U. S. 363, 64 S.Ct. 985, 88 L.Ed. 1326, are not in point. An act of Congress provided that a determination of the question of heirship of certain Indians by the probate courts of Oklahoma having jurisdiction to settle their estates, is conclusive of the question (25 U.S.C.A. § 375). The Congress has plenary power over Indian property and a determination of such questions is political and not judicial. The determination might have been delegated to the Secretary of the Interior or to any board, tribunal, or agency of the United States Government, and it would have been just as binding as if a court had decided it. In fact the probate courts of Oklahoma do not sit as courts in determining such questions. State ex rel. Miller v. Huser, 76 Okl. 130, 184 P. 113.

A diligent search has been made by us, and we have found no case, and counsel have cited none, which holds that a determination of heirship by a probate court affects any property except that over which that court had jurisdiction with power of distribution to heirs or devisees.

The only cases directly in point, so far as we have been able to discover, are those of the states of Kansas and Oregon. It was held in the following cases that judgments of the probate court determining heirship in the distribution of the personal property of estates did not affect title to

real property. First Colored Baptist Church v. Caldwell, 138 Kan. 581, 27 P.2d 237; on rehearing 139 Kan. 45, 30 P.2d 144; McVeigh v. First Trust Co. of Wichita, 140 Kan. 79, 34 P.2d 571; State v. O'Day, 41 Or. 495, 69 P. 542.

Later the legislature of Kansas enacted a law which provided that the executor or administrator should have possession of the real property of decedents during administration, if so ordered by the court, with power to control and manage it and to receive the rents therefrom. It was held in Page v. Van Tuyl, 150 Kan. 285, 92 P. 2d 110, in construing this statute, that probate courts have jurisdiction over the whole of the estates of decedents, and that during administration the district court could not partition the real estate; that the probate court having such jurisdiction, had authority to state the proportion of both real and personal property to which each heir, devisee and legatee is entitled, and to distribute the estate accordingly. While the question here considered has not been determined in that court, it may be that with the power the probate courts now possess in Kansas that their judgments in distributing the estates among heirs would be binding in all courts regarding the division of real property. However that may be, until jurisdiction over real estate was conferred upon probate courts by the legislature of Kansas, its determination of heirship did not affect the title to real estate.

The Oregon constitution and laws regarding the present question are substantially the same as those of New Mexico. While the precise question has not been decided by the Oregon Supreme Court, it was stated in State v. O'Day, 41 Or. 495, 69 P. 542, 544, on the question of the jurisdiction of the Oregon County Court:

"There is a marked difference, however, in its (county court's) jurisdiction over real and personal property. The title to real property descends to the lawful heirs immediately upon the death of the ancestor, subject only to the right of the administrator or executor to possession for the purpose of paying debts, etc. * * * *No order of the county court,* therefore, sitting for the transaction of probate business, attempting to partition real estate of a decedent, or *determining the question of heirship, can affect the title.*" (Our emphasis.)

In other words, the decree or judgment of a probate court expends its force in making a distribution of personal property *unless* it has jurisdiction over real estate with the power of distribution; a power that New Mexico probate courts do not possess, and which was not possessed by the probate courts of Kansas and Oregon at the time of the decisions in State v. O'Day, supra, and McVeigh. v. Trust Co., supra.

The California Supreme Court in Toland v. Earl, 129 Cal. 148, 61. P. 914, 915, 79

Am.St.Rep. 100, states in substance that the law of California with reference to the distribution of estates affects not only the personalty but the real estate:

"The proceeding differs much from the systems of administration where the personal property goes to the personal representative and the land to the heir."

In that state the real estate is distributed by the Superior Court, sitting as a court of probate.

The same may be stated of the state of North Dakota, where both personal and real property are distributed among the heirs by the probate court, and all deraignment of title to all the property (real and personal) of deceased persons is through the decree of distribution of the probate court, entered in closing estates. The Supreme Court of that state said:

"It constitutes, not only the law of the personalty, but also of the real estate." Sjoli v. Hogenson, 19 N.D. 82, 122 N.W. 1008, 1012.

Regarding the authority of superior courts of California in probate matters, see William Hill Co. v. Lawler, 160 Cal. 359, 48 P. 323; Shaw v. Palmer, 65 Cal.App. 441, 224 P. 106. They have jurisdiction over the distribution of both real and personal property.

Much reliance is placed by appellee on Fischer v. Sklenar, 101 Neb. 553, 163 N.W. 861, 866, an action to quiet title in which both parties claimed title through Augustine Sklenar, deceased. The plaintiff claimed by mesne conveyance through Marie Anna Hamernik, who claimed to be deceased's illegitimate daughter and his sole heir. The defendants were deceased's brother and sister. In the administration proceeding, upon due notice, a decree was entered finding plaintiff to be the sole heir of deceased, and assigning the real estate involved to her by authority of a statute which gives the administrator the right to the possession of the real estate of the deceased, and to its rents and profits, "until the estate shall have been settled, or until delivered over, by order of the county court, to the heirs or devisees." The administrator may recover possession by ejectment.

The court reasoned as follows:

"In order to relieve the personal representative of liability for rent and profits, the real estate must be delivered by him to the parties entitled thereto, and the ascertainment of the proper persons is strictly within the jurisdiction of the county court."

The court said:

"We conclude that the decree of the county court finding that Mrs. Hamernik is the sole heir of Augustine Sklenar, deceased, is a valid and binding adjudication of that fact and cannot be assailed in this proceeding."

■ Probate courts in New Mexico have only probate jurisdiction. Their judgments are in rem, and apply to personal property only, over which alone they have jurisdiction.

■ We conclude that the determination of heirship in a judgment or decree of a probate court, as a fact or status, is not conclusive upon the district court if such fact or status becomes an issue in a suit or action in the district court involving title to real property. And see Geracy, Inc. v. Hoover, 77 U.S.App.D.C. 55, 133 F.2d 25, 147 A.L.R. 185, and annotations following at page 196.

It is said that title examiners have depended upon these probate decrees as settling the question of heirship to real property and this decision may affect land titles in New Mexico. It may be, as in this case, that some titles will be affected by our decision, so that purchasers relying on probate decrees will be compelled to give way to equally innocent real owners of the property; but it is not probable there are many of such cases.

It is a matter of common knowledge that probate proceedings are usually ex parte; that probate judges in this state are, with few exceptions, not lawyers, and many are ignorant and not fitted for the office. Often they sign prepared orders and decrees without reading; or if read, then without understanding the import. If in fact these courts had the jurisdiction asserted, it would be exercised in most cases without any real trial to determine the fact of heirship. Because of these conditions a statute was enacted authorizing the removal of all proceedings to the district court for administration, where the estate exceeds $2000 in value, precluding any action on the part of probate courts in such proceedings.

The legislature can and should enact a statute authorizing the district court to determine heirship in all cases wherein real estate is left by decedents, after due notice to all claimants, known and unknown, and a trial in which the question will be settled by a court learned in the law, with jurisdiction to determine it.

The Court acknowledges its obligation to the Honorable James M. Hervey and the Honorable Don G. McCormick of the New Mexico Bar who, at our request, filed excellent briefs on this question.

■ It appearing that the appellant paid appellee more for the land than it cost to buy the outstanding title, he should recover the amount sued for.

The judgment of the district court is reversed and cause remanded with instructions that judgment be entered for the appellant for the cost of the Tamme interest in the land, with costs.

It is so ordered.

LUJAN, SADLER, McGHEE, and COMPTON, JJ., concur.

On Motion for Rehearing.

Brice, Chief Justice.

Our suggestion in the opinion filed that the legislature enact a statute authorizing the district courts to determine heirship upon the conditions stated in the suggestion is construed by at least one district judge in the state, so Amicus Curiae, Caswell S. Neal, Esquire, of Carlsbad, informs us, as casting a cloud on proceedings under L. 1937, c. 214, 1941 Comp. §§ 33-711 to 33-713. It certainly was not our intention to do so.

The motion for rehearing will be denied.

SADLER, McGHEE, and COMPTON, JJ., concur.

LUJAN, J., being absent on account of illness, did not participate.